FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 2 7 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RONALD MORRIS,

                              Plaintiff,               **MEMORANDUM AND ORDER**

          — against —                                  09-cv-5692 (SLT) (RML)

BELLEVUE HOSPITAL CENTER

                              Defendant.
------------------------------------------------------------X
**TOWNES, United States District Judge:**

          Ronald Morris ("Plaintiff") brings this action against the Bellevue Hospital Center

("Defendant"), alleging that Defendant harassed, discriminated, and retaliated against him in

violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.,

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000-e et. seq., and the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et. seq.[1]  Defendant has moved

to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6),

asserting that some of Plaintiff's claims are unexhausted and that, with regard to Plaintiff's

remaining claims, he has failed to state a plausible claim for relief.  For the reasons that follow,

the court grants Defendant's motion in part and denies it in part.


                              I. STANDARDS OF REVIEW

          In considering a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil

Procedure, a court must accept all factual allegations in the complaint as true, and draw all

reasonable inferences in the plaintiff's favor.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555–56 (2007).  However, "the tenet that a court must accept as true all of the allegations

---

[1] Although Plaintiff's administrative complaint also alleged that he endured discrimination
on account of a perceived disability – that one of Defendant's employees stated he was
"bugging" -- the  New York State Division of Human Rights ("SDHR") found that such statement
did not "trigger the protection of the Human Rights Law on the basis of perceived disability."
(Ex. B Attached to Defendant's Motion to Dismiss ("Def. MTD").)  In any event, Plaintiff does not
raise before this court any claim pursuant to the Americans with Disabilities Act.

contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 569. If a party does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.*

Because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint," *Cortec Indus. ., Inc. v. Sum Holding L.P*, 949 F.2d 42, 47 (2d Cir. 1991) (internal citations omitted), materials outside the four corners of the complaint are "generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr*, 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004). However, a court can consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc.*, 949 F.2d at 47–48). The Second Circuit has clarified, however, that mere notice or possession of a document is not enough, and a plaintiff must have *relied* on the document in drafting the complaint. *See U.S. v. In'tl Longshoreman's Ass'n*, 518 F. Supp. 2d 422, 451 (E.D.N.Y. 2007) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

Moreover "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Fardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v.*

2

*Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

## II. BACKGROUND

Except where indicated, the following facts come directly from the amended complaint and Plaintiff's attached declaration and are stated in a light most favorable to Plaintiff, the party opposing dismissal.

On May 21, 2007, Plaintiff, fifty-three years old at the time, began his employment as a dental assistant at the Bellevue Hospital Pediatric Dental Clinic (the "Bellevue Dental Clinic"). (Plaintiff's Declaration ("Pl. Decl.") at 1.) As a dental assistant, Plaintiff was tasked with aiding dentists with dental procedures under the dentists' supervision and guidance. (Amended Complaint ¶ 10.) Dental assistants also prepare patients for various procedures, set up equipment and supplies, take X-rays, and are responsible for the condition of the dental operating rooms. (Id.) Following a meeting in July of 2007 concerning dental assistants, Plaintiff alleges that his supervisor, Dental Assistant Henry Gonzalez, and a co-worker, Jessica Sullivan, began to make discriminatory remarks to him about his age and his national origin. (Pl. Decl. at 2, 5.) Plaintiff further alleges that several colleagues, including Sullivan, refused to allow him to enter certain operating rooms, although Plaintiff does not indicate why, and accused him of losing medical instruments, although Plaintiff does not indicate whether these accusations were true. (Id. at 2.) Plaintiff states that he reported these incidents to Dr. Peter Catapano, the Director of the Bellevue Dental Clinic, but that no steps were taken to correct these individuals' behavior. (Id. at 3.)

In January of 2008, Plaintiff was assigned to assist Dr. Charlie Lawson. Plaintiff alleges that on several occasions, Lawson invited Plaintiff to join him for dinner or a drink and told Plaintiff that if he was willing to go out with him that Lawson could arrange for Plaintiff to work at

3

a hospital closer to his home. (Id. at 3-4.) Plaintiff states that although he refused Lawson's offers, "[a]fter refusing . . . [Lawson] would sing a song 'Old McDonald had a farm.'" (Id. at 4.)

Although it is unclear for how long Plaintiff assisted Lawson, in April of 2008, Catapano assigned Plaintiff to assist Dr. Douglas Pollack. (Id. at 4.) While working together, Plaintiff alleges that Pollack made sexual comments, inappropriately touched him, and tried to kiss him while he was preparing an examination room for a patient. (Amended Complaint ¶ 13; Pl. Decl. at 4-5.) Plaintiff further alleges that Pollack invited him out to dinner and even offered to pay for Plaintiff to attend a two year dental course in Hawaii or Alaska. (Amended Complaint ¶ 13; Pl. Decl. at 5.) Plaintiff asserts that after refusing Pollack's advances, Pollack became hostile towards him and began to find fault with his work. (Pl. Decl. at 5.) Plaintiff also alleges that Pollack treated female dental assistants differently than he treated male assistants by assigning them different tasks. (Id.)

In addition, Plaintiff asserts that Dr. So, a resident at the Bellevue Dental Clinic, made a derogatory comment about his appearance and that he was once required to bring a note from his physician explaining why he had left early from work even though the Bellevue Dental Clinic's policy only mandates that employees bring in notes from their physicians when they are absent from work for more than three days due to illness. (Id. at 4, 7.) On May 9, 2008, Plaintiff states that he received a note instructing him to meet Matthew Driscoll, whose position at the Bellevue Dental Clinic is unclear, in Driscoll's office. (Id. at 8.) At that meeting, Driscoll informed Plaintiff that his employment with the Bellevue Dental Clinic had been terminated. (Id.) Plaintiff complained to his Union Representative, Darryl Ramsey, but Plaintiff alleges that Ramsey informed him that there was nothing that he could do for him. (Id.)

On May 23, 2008, Plaintiff filed charges with the New York State Division of Human Rights ("SDHR") and the United States Equal Employment Opportunity Commission ("EEOC"), asserting claims arising under Title VII, the ADEA and the Americans with Disabilities Act. (Unnumbered Exhibit Attached to Amended Complaint; Ex. A Attached to Defendant's Motion to

Dismiss ("Def. MTD").)  On March 13, 2009, the SDHR sent Plaintiff a Determination and Order After Investigation, notifying him that it had completed its investigation and was dismissing his complaint based on its finding of no probable cause.  (Ex. B Attached to Def. MTD.)  The SDHR informed Plaintiff that its investigation revealed that he had displayed "inappropriate and erratic behavior prior to [Defendant's] decision to terminate his employment during his probationary period, that Gonzalez, as Plaintiff's supervisor, had received complaints regarding Plaintiff's ability to perform his duties effectively, that he had "odd outbursts in the corridors in front of patients," and that "his intimidating and frightening conduct . . . made staff members uncomfortable."  (Id.)  Finally, the SDHR noted that Catapano recommended Plaintiff's dismissal "based on his continual inability to assist in the treatment of patients in the operating room; his own inappropriate hygiene; complaints from [Plaintiff's] colleagues that he was following them around the clinic and staring at them; and his overall unsatisfactory performance of his tasks and duties as a dental assistant."  (Id.)  In light of these findings, the SDHR concluded that its "investigation does not support [Plaintiff's] claims of discrimination because of race, color, age, perceived disability, sex and opposing discrimination."  (Id.)  Following the SDHR's decision, on July 6, 2009, the EEOC sent Plaintiff a Dismissal and Notice of Rights, indicating that the EEOC had adopted the findings of the SDHR and informing Plaintiff that his lawsuit "must be filed WITHIN 90 DAYS of [his] receipt of this notice."  (Unnumbered Exhibit Attached to Amended Complaint) (emphasis in original).  Plaintiff alleges, however, that he did not receive this notice until November 24, 2009 (Amended Complaint ¶ 12.)  In any event, on December 28, 2009, Plaintiff commenced the instant lawsuit.

### III. Discussion

Plaintiff's NYSHRL Claim

The NYSHRL prohibits employment discrimination on the basis of, *inter alia*, age, race, color, national origin, or sex.  N.Y. Exec. Law § 296.  Further, section 297(9) provides that

> [a]ny person claiming to be aggrieved by an unlawful

5

> discriminatory practice shall have a cause of action in any court of
> appropriate jurisdiction for damages . . . and such other remedies
> as may be appropriate . . . unless such person had filed a
> complaint hereunder or with any local commission on human
> rights . . . where the division has dismissed such complaint on the
> grounds of administrative convenience, on the grounds of
> untimeliness, or on the grounds that the election of remedies is
> annulled, such person shall maintain all rights to bring suit as if no
> complaint had been filed with the division.

N.Y. Exec. L. § 297(9).  In other words, "a person claiming to be aggrieved by an unlawful

discriminatory practice may seek relief either from a court of appropriate jurisdiction or from the

[SDHR] or any local commission on human rights, but not both." *Lennon v. New York City*, 392

F. Supp. 2d 630, 640-41 (S.D.N.Y. 2005); *see also Moodie v. Fed. Reserve Bank*, 58 F.3d 879,

882-83 (2d Cir. 1995) ("Generally the remedies of administrative review through the [SDHR]

and judicial review are mutually exclusive.") (quoting *Pan American World Airways v. New York*

*State Human Rights Appeal Board*, 463 N.E.2d 597, 600 (N.Y. 1984)).  When a plaintiff elects

to pursue claims of discrimination through administrative proceedings before the SDHR, section

297(9) "poses an 'insuperable jurisdictional bar' to subsequently raising those claims of

discrimination in court." *Smith-Henze v. Edwin Gould Servs. for Children and Families*, 2006

WL 3771092, at *3 (S.D.N.Y. Dec. 21, 2006) (quoting *Moodie*, 58 F.3d at 882-84).  Thus,

Plaintiff's election of remedies "deprives the Court of subject matter jurisdiction over the state

law claim of discrimination." *Id.*  The only exceptions to this jurisdictional bar "are when the

complaint has been dismissed 'on the grounds of administrative convenience, on the grounds of

untimeliness, or on the grounds that the election of remedies is annulled.'" *Id.* (quoting N.Y.

Exec. L. § 297(9)).  This express limitation on the election of remedies applies equally to

NYSHRL claims brought in state court and to those brought as pendant claims in federal court.

*See Lennon*, 392 F. Supp. 2d at 641.  Here, there is no dispute that Plaintiff filed his complaint

with the SDHR, raising his state law claim of discrimination in that complaint.  It is further

undisputed that the SDHR ruled on the merits of Plaintiff's claim, dismissing his complaint

because it found no probable cause and not because of any of the applicable exceptions

carved out by section 297(9). Accordingly, the court dismisses Plaintiff's discrimination claim under the NYSHRL.

Plaintiff's Title VII and ADEA Claims

Title VII discrimination and retaliation claims are typically analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). This same framework also applies to claims of age discrimination and retaliation under the ADEA. *See Bucalo v. Shelter Island Union Free School Dist.*, 691 F.3d 119, 129 (2d Cir. 2012). However, the Supreme Court has stated, and the Second Circuit has since reiterated, that at the pleading stage, "the survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a prima facie case under the standard set forth in *McDonnell Douglas*." *Hewitt v. New York City Dep't of Health and Mental Hygiene*, 2012 WL 1106715, at *2 (E.D.N.Y. Mar. 31, 2012) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002)); *see also Arista Records LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010) (stating that this remains the correct analytical framework in the wake of *Twombly* and *Iqbal*). Rather, the complaint "must include only a short and plain statement of the claim showing that the pleader is entitled to relief." *See Swierkiewicz*, 534 U.S. at 512 (internal citation omitted).

A. Plaintiff's Claims of Discrimination Under the ADEA and Title VII Based on His Race and National Origin

As an initial matter, the court deems exhausted Plaintiff's claim that he was discriminated against based on his national origin. While it is true that Plaintiff did not check the box on his SDHR complaint indicating discrimination on the basis of national origin, that factor is not dispositive. *See Benjamin v. Brookhaven Science Assocs, LLC*, 387 F. Supp. 2d 146, 156 (E.D.N.Y. 2005) ("The fact that [plaintiff] failed to mark the box on his EEOC charge alleging disability discrimination is not dispositive of that issue."); *Tsai v. Rockefeller Univ.*, 137 F. Supp. 2d 276, 284 (S.D.N.Y. 2001) ("Nor does the fact that plaintiff omitted to check the

7

appropriate boxes on her EEOC charge necessitate dismissal of her Title VII claim."). Although Plaintiff did not check the box for discrimination based on "national origin" in his SDHR complaint, he did indicate that he faced discrimination because he was "black not bilingual." (Ex. A Attached to Def. MTD.) Given the "loose pleading" standards that govern administrative complaints, the court finds Plaintiff's statement regarding his inability to speak a second language reasonably related to his allegations before this court that he suffered discrimination because he is Jamaican and not Puerto Rican. *See Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (noting that "precise pleading is not required for Title VII exhaustion purposes" and cautioning courts against any "attempt to draw overly fine distinctions between race and national origin claims as part of the threshold exhaustion inquiry prior to the full development of a plaintiff's claims, given the potential overlap between the two forms of discrimination, and the 'loose pleading' which is permitted in the EEOC complaint."); *see also McNeil v. Aguilos*, 831 F. Supp. 1079, 1081 (S.D.N.Y. 1993) ("The primary language of an individual is often an essential national origin characteristic.") (quoting EEOC Guidelines on Discrimination Because of National Origin, 29 C.F.R. § 1606.7(a)). Accordingly, the court will consider Plaintiff's claim that Defendant discriminated against him on the basis of his national origin.

Nonetheless, the court finds Plaintiff's claims of discrimination based on his race and national origin to be without merit. As to Plaintiff's claim that he endured discrimination on the basis of his race, the court notes that Plaintiff has alleged no conduct that pertains specifically to his race, beyond his own bald assertions that he experienced "hostility toward [him] based on [his] race," and that he was "terminated because of . . . [his] race." (Amended Complaint ¶¶ 14, 15.) Simply stated, such conclusory allegations are insufficient to state a plausible claim and the court need not credit them. *See Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 126 (2d Cir. 2007) (noting that "bald assertions and conclusions of law will not suffice" to defeat a motion to dismiss). As to Plaintiff's claim that he faced discrimination on account of his national origin, the only conduct Plaintiff complains of concerning his national origin consists of

two comments by his co-worker, Sullivan.  Plaintiff alleges that, on one occasion, Sullivan told

him, "I am Puerto Rican and my man Henry [Gonzalez, Plaintiff's supervisor] is a Puerto

Rican[,] whatever I said or do in this clinic goes.  I was born here and you were not."  (Amended

Complaint ¶ 11; Pl. Decl. at 2.)  Plaintiff alleges that Sullivan, on another occasion, referred to a

"joint commission" charged with inspecting the Bellevue Dental Clinic as the "Jamaica

Commission."  (Pl. Decl. at 5.)  However, isolated comments such as these, without more, are

insufficient to support a plausible claim of discrimination.  *See Danzer v. Norden Systems, Inc.*,

151 F.3d 50, 56 (2d Cir. 1998) (noting that "stray remarks, even if made by a decisionmaker, do

not constitute sufficient evidence to make out a case of employment discrimination.").

Similarly, to the extent Plaintiff argues that he was subjected to a hostile work

environment due to his race or national origin, these two instances of somewhat irreverent

comments over the course of a year are simply insufficiently severe or pervasive to create an

objectively hostile work environment.  *See Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 547 (2d

Cir. 2010) (noting that to establish a hostile work environment claim a plaintiff must proffer

evidence of conduct that is severe or pervasive enough to create an "objectively hostile or

abusive work environment," such that "a reasonable person would find [it] hostile or abusive.")

(citation omitted); *see also Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("As a general

rule, incidents must be more than episodic; they must be sufficiently continuous and concerted

in order to be deemed pervasive.") (internal quotation marks and citation omitted).  The court

therefore finds that dismissal is warranted as to Plaintiff's claims that he was terminated or

subjected to a hostile work environment based on his race and/or national origin.

Plaintiff's ADEA claim rests on a similarly slender reed.  The only allegation to support

his claim of age discrimination contained in Plaintiff's SDHR complaint, his amended complaint,

or his declaration is that at some point after July of 2007, his supervisor, Gonzalez, and a co-

worker, Sullivan, began to call him "Old Man" and tell him that he moves too slowly.  This too is

insufficient to state a claim for either discrimination based on age, *see Danzer*, 151 F.3d at 56,

9

or a hostile work environment. *See Kaytor*, 609 F.3d at 547. Indeed, Plaintiff has not ever alleged that his termination was in any way a result of his age. In light of these considerations, the court finds dismissal regarding Plaintiff's claim of discrimination based on his age is warranted as well.[2]

B. Plaintiff's Claim that Defendant Retaliated Against Him For Opposing Discrimination Based on His Age, Race, and National Origin

Plaintiff also alleged in his SDHR complaint that he was terminated in retaliation for opposing the treatment he received based on his age, race, and national origin in violation of the ADEA and Title VII. And, contrary to Defendant's assertion that Plaintiff did not protest the discriminatory remarks concerning his national origin and age, Plaintiff states in his declaration attached to his amended complaint that he reported Gonzalez's and Sullivan's comments to Catapano. (Pl. Decl. at 2). The court finds such complaints sufficient to defeat Defendant's motion to dismiss. *See Marrero v. R-Way Moving & Storage, Ltd.*, 2012 WL 3544752, at *9 (E.D.N.Y. Aug. 16, 2012) (noting that an employee need not file a formal complaint to engage in "protected activity," and finding that an employee's complaints to his supervisor specifically referring to the discriminatory comments "were sufficient to constitute protected activity.") (citing *Crawford v. Metro Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 275 (2009) (reporting harassing and 'inappropriate behavior' by co-workers to a superior qualifies as 'opposition')). Moreover, even were Plaintiff required to establish a *prima facie* case, the court cannot, at this stage in the proceedings, determine as a matter of law that there is no causal connection

---

[2] The court notes that Plaintiff also alleges that Defendants engaged in a variety of hostile conduct towards him, including that various individuals accused him of losing instruments, exiled him from certain operating rooms, called him "ugly" in front of a patient, accused him of "bugging," and asked him to bring in a note from his physician after taking less than three days of leave from work despite Defendant's policy that physician notes are only required when an individual is absent from work for more than three days. (Pl. Decl. at 2-3, 7.) However, as Plaintiff does not even suggest that any of these incidents were in any way due to his race, color, religion, national origin, gender, or age, these incidents are insufficient to raise a claim pursuant to Title VII or the ADEA.

10

between Plaintiff's protected activity and his termination. The findings by the SDHR indicate that Catapano, the individual to whom Plaintiff complained, is also the individual who recommended Plaintiff's termination and, as Plaintiff has not stated when he complained, the court can draw no conclusion as to how soon after Plaintiff complained to Catapano he was terminated. (Ex. B Attached to Def. MTD; Pl. Decl. at 2.) Thus, on the record before it, dismissal of Plaintiff's retaliation claims based on his complaint that he was being discriminated against because of his age and national origin is not appropriate at this juncture.

The court finds, however, that as Plaintiff has not alleged that he in any way protested or opposed any incidents regarding his race, Defendant is entitled to dismissal of that claim. *See Pearson-Fraser v. Bell Atl.*, 2003 WL 43367, at *3 (S.D.N.Y. Jan. 6, 2003) (noting that to survive dismissal of a retaliation claim, a plaintiff must, "reference, at a minimum, the suit or grievance spawning the retaliation and the acts constituting retaliatory conduct" because "[a]bsent these allegations, a defendant would not know how to respond to the complaint.") (citation omitted). And, to the extent Plaintiff suggests that his termination was retaliation for his complaints regarding Gonzalez's and Sullivan's comments about his nationality, the court disagrees. As indicated in its discussion regarding exhaustion, the court is cognizant of the potential overlap between claims of discrimination based on race and claims of discrimination based on national origin. Nevertheless, the Second Circuit has noted that "an assertion of racial bias is conceptually distinct from a claim of discrimination on the basis of national origin." *Deravin*, 335 F.3d at 201. The remarks Plaintiff attributes to Gonzalez and Sullivan pertain only to his Jamaican nationality and do not appear to be connected to his race in any way. As a result, the court finds that these remarks are in no way relevant to his claim that he suffered discrimination on the basis of his national origin. *Cf. Benjamin v. New York City Dep't of Health*, 2005 WL 1791898, at *2 (2d Cir. July 25, 2005) (unpublished summary order) (finding that an administrative complaint that focused exclusively on complainant's "dark skin" as the source of the discrimination "did not reasonably (or in fact) give rise to any administrative consideration of

11

whether [plaintiff] suffered discrimination because of her Jamaican origin as opposed to her race.").

C. Plaintiff's Claims of Sexual Harassment, Discrimination and Retaliation Based on His Gender

Plaintiff asserts that he suffered sexual harassment under theories of *quid pro quo* and a hostile work environment. *See Karibian v. Columbian Univ.*, 14 F.3d 773, 777 (2d Cir. 1994) (noting that a plaintiff seeking relief for sexual harassment may proceed under either a theory of *quid pro quo* or hostile work environment). Plaintiff also asserts that he suffered gender discrimination as well as retaliation by his superiors because of his opposition to the harassment he endured. The court considers these issues separately.

1. Plaintiff's Sexual Harassment Claim: *Quid Pro Quo*

Defendant does not argue that Plaintiff has failed to state a claim of *quid pro quo* sexual harassment, but rather only that Plaintiff has not adequately exhausted this claim. More to the point, Defendant asserts, somewhat summarily, that "[P]laintiff's quid pro quo sex discrimination claim is not reasonably related to the allegations of 'touching' in his SDHR complaint, and therefore cannot be considered [by the court.]" The court disagrees.

The "loose pleading" standard that governs administrative complaints recognizes that such complaints "are often filed by complainants without the aid of an attorney and with the primary purpose of alerting the [administrative agency] to the discrimination claimed by the complainant." *Hansen v. Danish Tourist Bd.*, 147 F. Supp. 2d 142, 152 (E.D.N.Y. 2001). Under this standard, "the relevant inquiry is whether the [administrative agency] could reasonably have been expected to investigate [Plaintiff's] claims of sex discrimination [or harassment]. . . based on the allegations [he] set forth in [his administrative] charge." *Id.* Indeed, Defendant appears to acknowledge the "relatedness" between Plaintiff's allegations of harassment before this court and those set forth in his SHDR complaint, noting that the instant allegations do not represent a new claim, but rather "are greatly expanded" from those in the administrative complaint. (Def.

12

MTD at 5.)

In any event, the court finds the allegations sufficiently related for exhaustion purposes. First, Plaintiff marked the box on his administrative complaint indicating that he suffered "sexual harassment." (Ex. A Attached to Def. MTD.) Second, in answering a question regarding what the harassment against him consisted of, Plaintiff did not include merely conclusory statements, but rather wrote that he had been "touch[ed]," and that an unidentified individual had invited him to dinner and made a comment about driving and parking his car, the same conduct that underlies Plaintiff's *quid pro quo* sexual discrimination claim currently before the court. (Id.) Finally, although Plaintiff did not specifically tie Drs. Pollack and Lawson to the sexual harassment he encountered at Bellevue Dental Clinic in his administrative complaint, he identified both men as among the four individuals who discriminated against him and clearly alleges in his declaration submitted to this court that they were the perpetrators of the sexual harassment he endured. In light of these considerations, the court finds that the conduct described in Plaintiff's amended complaint comprises "conduct that falls within the scope of the [SDHR] investigation of the original charges of discrimination." *See Oshinsky v. New York City Housing Auth.*, 2000 WL 218395, at *6 (S.D.N.Y. Feb. 23, 2000); (*see also* Ex. A Attached to Def. MTD (finding that, after investigating Plaintiff's claim of sexual harassment, it lacked probable cause because Plaintiff "[did] not provide corroboration to support his allegations of discrimination on the basis of . . . gender or sexual harassment" and noting that it lacked evidence "to find [Bellevue Dental Clinic] took adverse action against [Plaintiff] because of his . . . . sex and opposed discrimination/retaliation.").) Moreover, given that Plaintiff referred to the inappropriate touching and dinner invitations allegedly visited upon him by Drs. Pollack and Lawson in his administrative complaint, this case is distinguishable from *Hansen*, 147 F. Supp. 2d at 152-53, which is relied upon by Defendant. In that case, the court found that the plaintiff had not exhausted her *quid pro quo* sexual harassment claim because although she indicated in her administrative complaint that she was the victim of sexual harassment, she discussed

13

only that she was treated differently from her male counterparts, omitted any mention of the unwelcome sexual advance that later served as a basis for her court complaint, and indicated in her administrative complaint that the sexual harassment began after the alleged sexual advance. As the court finds that Plaintiff's allegations in his amended complaint of sexual harassment under a *quid pro quo* theory are "reasonably related" to the charges advanced in his SDHR complaint and are deemed exhausted, Defendant's motion to dismiss is denied as to this claim.

### 2. Plaintiff's Sexual Harassment Claim: Hostile Work Environment

Plaintiff's complaint may also be fairly read to allege that he faced sexual harassment in that he was subjected to a hostile work environment. As described, Plaintiff alleges that, on several occasions, Dr. Lawson invited him to join him for dinner or a drink and that Lawson told him that if he was willing to go out with him that Lawson could arrange for Plaintiff to work at a hospital closer to his home. (Pl. Decl. at 3-4.) Plaintiff further alleges that Dr. Pollack made sexual comments, inappropriately touched him, and tried to kiss him while he was preparing an examination room for a patient as well as asked him out to dinner in exchange for payment for a two year dental course in Hawaii or Alaska. (Id. at 4-5.) Given the liberal pleading standards, the court finds these facts sufficient to state a plausible hostile work environment claim based on the alleged sexual harassment Plaintiff endured. *See Carter v. New York*, 310 F. Supp. 2d 468, 476 (N.D.N.Y. 2004) (finding that plaintiff had established a material issue of fact regarding her hostile work environment claim where her supervisor greeted her by kissing her on her cheek three times in two years); *cf. Litchhult v. USTRIVE2, Inc.*, 2011 WL 3877084, at *4 (E.D.N.Y. Sept. 1, 2011) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)) (concluding team member's offensive comment insufficiently severe for purposes of hostile work environment claim and drawing distinction between physically threatening or humiliating conduct from that which is simply an offensive utterance). Nor does the fact that Plaintiff's alleged harasser was also male automatically defeat his hostile work environment on

14

the basis of his gender.  *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-82(1998) (concluding that "same-sex sexual harassment is actionable under Title VII" and noting that although, "[c]ourts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations . . . the same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual.").  Accordingly, the court denies Defendant's motion to dismiss as to this claim as well.

### 3. Plaintiff's Gender Discrimination Claim: Disparate Treatment

Although not addressed with any specificity by Defendant in its opening brief, the court finds that a fair reading of Plaintiff's declaration raises a claim of gender discrimination under a theory of disparate treatment.  To be sure, the claim hangs by a single thread, *i.e.*, Plaintiff's statement that female dental assistants were treated differently than their male counterparts because they were not made to "detail [or] clean X-Ray processing machine nor change compressor filters." (Pl. Decl. at 5.)  Nonetheless, given the appropriate pleading standards at this stage of the proceedings and drawing as it must all inferences in his favor, the court cannot say that Plaintiff's statements fail to "give [Defendant] fair notice of what [his] claim is and the grounds upon which it rests."  *Kear v. Katonah Lewisboro Central Sch. Dist.*, 2007 WL 431883, at *5 (S.D.N.Y. 2007).  Thus, the court finds that this claim too survives Defendant's motion to dismiss.[3]

### 4. Plaintiff's Claim that Defendant Retaliated Against Him For Opposing Sexual Harassment

Plaintiff alleged in his SDHR complaint that he was terminated in retaliation for opposing sexual harassment in violation of Title VII.  Here, however, there is no indication that Plaintiff, at

---

[3] The court declines to reach Defendant's argument, made for the first time in its reply brief, that Plaintiff's claim of disparate treatment is unexhausted.  *See  McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (observing that courts ordinarily do not consider issues raised for the first time in a reply brief).

any time, reported any of the alleged incidents of sexual harassment to a supervisor nor has Plaintiff pled any facts that suggest he otherwise protested or opposed discrimination on the basis of his gender. As a result, Plaintiff has not stated a plausible claim of retaliation on this ground and the court accordingly dismisses it. *See Pearson-Fraser v. Bell Atl.*, 2003 WL 43367, at *3 ("[I]n order to survive dismissal for a failure to state a claim, a plaintiff alleging retaliation must reference, at a minimum, the suit or grievance spawning the retaliation and the acts constituting retaliatory conduct. Absent these allegations, a defendant would not know how to respond to the complaint.") (internal quotation marks and citation omitted).

IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss [51] is GRANTED with respect to (1) Plaintiff's NYSHRL claim; (2) his hostile work environment claims and claims of discrimination on the basis of age, race, and national origin pursuant to the ADEA and Title VII; as well as (3) Plaintiff's claim of retaliation for opposing sexual harassment and discriminatory treatment on the basis of his race. Defendant's motion to dismiss Plaintiff's claims of (1) sexual harassment under separate theories of *quid pro quo* or hostile work environment; (2) disparate treatment gender discrimination; as well as (3) his claims of retaliation for opposing discriminatory treatment based on his age and national origin is DENIED.

SO ORDERED.

/S/ Judge Sandra L. Townes

_____.
SANDRA L. TOWNES
United States District Judge

Dated: November 21, 2012
Brooklyn, New York

16